# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **MARY L. MATTHEWS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | |
| **UNIVERSITY OF THE INCARNATE** | § | **SA-07-CA-1040 FB (NN)** |
| **WORD,  DONNA ARONSON,** | § | |
| **JOHN PERRY, LYDIA ANDRADE,** | § | |
| **ROBERT KUNCZT, DENISE DOYLE,** | § | |
| | § | |
| **Defendants.** | § | |

**TO:    Hon. Fred Biery**
     **United States District Judge**

## <u>MEMORANDUM AND RECOMMENDATION</u>

This memorandum and recommendation addresses the motion to dismiss/compel

arbitration filed by defendants, University of the Incarnate Word, Donna Aronson, John Perry,

Lydia Andrade, Robert Kunczt, and Denise Loyle (together, the defendants).[1]  I have jurisdiction

to enter this memorandum and recommendation pursuant to the district court's order referring all

pretrial matters to me for disposition by order or to aid the district court by recommendation

where my authority as a magistrate judge is statutorily constrained.[2]  After considering the

defendants' motion, plaintiff Mary Matthews's response, the applicable agreement, I recommend

that the district court compel arbitration and dismiss this case.

Previously, Matthews was employed by University of the Incarnate Word as an adjunct

---

[1]Docket entry # 15.

[2]Docket entry # 5.

professor.  She has sued the defendants for unlawful employment discrimination that she maintains occurred during her employment—specifically, for discrimination based on sex, national origin and religion under Title VII of the Civil Rights Acts of 1964 (Title VII), retaliation under Title VII, and age discrimination under the Age Discrimination in Employment Act (ADEA).[3]  The defendants ask the district court to dismiss this case and to compel Matthews to arbitrate, arguing that Matthews agreed to submit her dispute against the defendants to final and binding arbitration.

"A party cannot be compelled to submit a dispute to arbitration unless there has been a contractual agreement to do so."[4]  When a party moves to compel arbitration, "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."[5]  In determining whether the compel arbitration, the district court must "resolve doubts concerning the scope of coverage of an arbitration clause in a contract in favor of arbitration."[6]  Both ADEA claims and Title VII claims are subject to arbitration.[7]  When all the issues raised in the district court must be

---

[3]*See* docket entry # 6.

[4]*Neal v. Hardee's Food Sys.*, 918 F.2d 34, 37 (5th Cir. 1990).

[5]9 U.S.C.A. § 4.

[6]*Neal*, 918 F.2d at 37.

[7]*See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 36 (1991) (age discrimination claims); *Alford v. Dean Witter Reynolds*, 939 F.2d 229, 230 (5th Cir.1991) (Title VII claims).

submitted to arbitration, the district court may dismiss the case.[8]

To show that Matthews agreed to arbitrate her claims, the defendants submitted the University of the Incarnate Word's Dispute Resolution Plan (the Plan) and a document showing that Matthews agreed to employment conditioned on being bound by the Plan.  The Plan states that it "is designed to provide a program for the quick, fair, accessible, and inexpensive resolution of Disputes between the University [of the Incarnate Word] and the University's present and former Employees . . . related to or arising out of a current, former or potential employment relationship with the University."[9]  The Plan further states that it creates "in lieu of litigation, an exclusive and binding procedural mechanism for the final resolution of all Disputes between the University and the University's present and former Employees . . . related to or arising out of a current, former, or potential employment relationship with the University."[10]  The Plan defines Dispute as follows:

> [A]ll legal and equitable claims, demands, and controversies, of whatever nature or kind, whether in contract, tort, under statute or regulation, or some other law, between the University and its Employees and a person or entity otherwise entitled to its benefits, including, but not limited to, any matters with respect to . . . . matter[s] related to or concerning the relationship between the Employee and the University including, by way of example and without limitation, allegations of: discrimination based on race, sex, . . . religion, color, national origin, age, . . . [and] Title VII retaliation . . . .[11]

No question exists that Matthews's claims fall within this definition.  Matthews's dispute with

---

[8]*See Alford*, 975 F.2d at 1164.

[9]Docket entry # 15, exh. 3, p. 1.

[10]*See id.*

[11]*See id.* at p. 2.

the defendants arose from her employment at the University of the Incarnate Word.  She

complains about being terminated and replaced by a younger, white, non-Catholic male.[12]  She

seeks legal remedies under statutes—the AEDA and Title VII.[13]  Matthews's claims include

discrimination based on sex, national origin, religion, age and retaliation.

    In addition, no question exists that Matthews agreed to submit her dispute to arbitration.

The document showing that Matthews agreed to employment conditioned on being bound by the

Plan states as follows:

> Effective August 1, 2005, all employment disputes between the University of the
> Incarnate Word or any of its affiliated entities (UIW) and . . . faculty members . . .
> will be automatically subject to resolution through the Dispute Resolution
> Program adopted by the UIW and described in the attached documents entitled the
> *University of the Incarnate Word Dispute Resolution Plan* (the "Plan") . . . . Your
> decision to accept employment or to continue your current employment with UIW
> after August 1, 2005 means that you have agreed to and are bound by the terms of
> the Dispute Resolution Program contained in the Plan . . . . [Y]ou and UIW are
> both waiving all rights (including the right to trial by jury) either may have to
> bring a lawsuit for employment related matters in sate or federal court, including,
> but not limited to, lawsuits involving claims of discrimination based upon: race,
> sex, . . . religion, color, national origin, [or] age . . . .  By signing, you are
> confirming that you have read, understand, and consent to the terms of the Plan . .
> . constituting the UIW Dispute Resolution Program.[14]

Matthews signed the document on March 28, 2005.  Matthews complains about conduct that she

alleges occurred after that date.[15]

    Responding to the defendants' motion, Matthews gives two reasons why her case should

---

[12]*See* docket entry # 6, p. 3.

[13]*See id.* at p. 1.

[14]Docket entry # 15, exh. 2.

[15]*See* docket entry # 6, p. 4.

not be dismissed.  First, she states that she cannot afford the cost to arbitrate her claims.[16]  Under the Dispute Resolution Plan, the University of the Incarnate Word pays all fees and expenses owed to the arbitrator after the employee pays a $50.00 fee to the applicable arbitrator.[17]  A fifty-dollar fee is an insufficient reason for permitting Matthews to avoid her contractual obligation to arbitrate her dispute.  Second, Matthews states that her agreement to arbitrate her dispute is null and void because the defendants refused to mediate.[18]  Matthews has confused the University of the Incarnate's Word's refusal to participate in the EEOC's mediation process with the requirement to arbitrate her dispute.[19]  The defendants' refusal to mediate Matthews's dispute has no bearing on the enforceability of the arbitration agreement.

## Recommendation

Matthews agreed to arbitrate her dispute with the defendants; and therefore, she should be compelled to arbitrate her claims.  Consequently, I recommend GRANTING the defendants' motion to compel (docket entry # 15).  Because all of Matthews's claims are subject to arbitration, the district court can dismiss this case.  Staying this case pending arbitration would serve no purpose.  Therefore, I recommend DISMISSAL of this case.[20]

## Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this memorandum and

---

[16]Docket entry # 17, pp. 2-3.

[17]Docket entry # 15, exh. 4, §§ 6 & 33.

[18]Docket entry # 17, p. 3.

[19]*See id.*, exh. II.

[20]*See Alford*, 975 F.2d at 1164.

recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "Filing User" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this memorandum and recommendation must be filed within 10 days after being served with a copy of same, unless this time period is modified by the district court.[21]  **Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge.**

A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[22]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this memorandum and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[23]

     **SIGNED** on February 22, 2008.

*Nancy Stein Nowak*

NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[21] 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

[22] *Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root, Inc*., 200 F.3d 335, 340 (5th Cir. 2000).

[23] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).